**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Zawadi Mukarugwiza,<br><br>Plaintiff,<br><br>v.<br><br>JPMorgan Chase Bank NA, et al.,<br><br>Defendants. | No. CV-15-00079-PHX-NVW<br><br>**ORDER** |

Before the court is Defendant MetLife Home Loans, LLC's ("MetLife") Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. 24). The Motion will be denied.

**I.    BACKGROUND**

In 2009 Plaintiff Zawadi Mukarugwiza took out a home loan from MetLife and executed a deed of trust that named MetLife as beneficiary. (Doc. 20 at 2.) She began making full and timely monthly payments but soon fell into financial hardship after losing one of her two jobs. (*Id.*) To replace the lost income, Mukarugwiza turned to the Arizona Department of Housing ("Department"), which administers a program called Save Our Home Arizona ("Save Our Home"), funded by the U.S. Treasury Department's Hardest Hit Fund. (*Id.*) Save Our Home assists struggling borrowers by covering incoming arrearage, making a portion of monthly loan payments, and contributing to principal reduction upon borrowers' "graduation" from the program. (*Id.* at 4.) In return for a guaranteed stream of payments, participating lenders must agree to "foreclosure

abeyance" provisions that prohibit foreclosure of approved borrowers' homes. (*Id.*) The Hardest Hit Fund Agreement ("HHF Agreement") between the Department and MetLife, for instance, contains the following language: "Upon notification that a borrower has been conditionally approved for HHF, [MetLife] shall not initiate the foreclosure process or, if the borrower is already in the foreclosure process, conduct a foreclosure sale for 45 days, with any extensions by mutual consent of [the Department] and [MetLife]." (Doc. 20-2 at 2.)

The Department determined that Mukarugwiza met Save Our Home's qualifying criteria and conditionally approved her application on April 10, 2012. (Doc. 20 at 3.) Two weeks later, on April 23, 2012, the Department notified MetLife that it had issued final approval for Mukarugwiza. (*Id.*) As required by the program, Mukarugwiza executed a second deed of trust on her home in favor of the Department and had it recorded on May 15, 2012. (*See id.* at 3-4.) Mukarugwiza and Save Our Home jointly made timely payments to MetLife following her enrollment in the program. (*Id.* at 4.)

Despite receipt of these payments, and despite the foreclosure abeyance provision in MetLife's HHF Agreement, MetLife recorded a substitution of trustee on May 21, 2012, authorizing Quality Loan Service to sell the home at auction. (*Id.* at 5.) MetLife also noticed a trustee's sale of Mukarugwiza's home for August 29, 2012, although no auction occurred on that date. (*Id.*) Sometime in 2013, MetLife sold Mukarugwiza's loan and associated servicing rights to JP Morgan Chase Bank ("JP Morgan"), which sold the home to IH2 Property at an August 29, 2013 trustee's sale. (*Id.* at 6.) As a result of the foreclosure, the Department terminated Mukarugwiza's participation in Save Our Home. (*Id.* at 6-7.) "Termination meant that house payment assistance ceased . . . and Save Our Home cancelled the disbursement of $34,654 to her lender on her behalf, which would have cured all arrearage on the loan and brought it current." (*Id.* at 7.) In addition, Mukarugwiza was unable to obtain a loan modification, and she was "disqualified . . . from the Save Our Home loan principal reduction feature, which in her case would have

reduced the balance of her loan by $80,000." (*Id.*) IH2 Property subsequently obtained a court order directing Mukarugwiza to surrender her home within five days. (*Id.*)

Mukarugwiza filed suit in this court on January 16, 2015. (Doc. 1.) Her Verified Amended Complaint, submitted on April 13, 2015, seeks damages and declaratory relief on two counts of breach of contract, one count of wrongful foreclosure, and one count of negligent performance of an undertaking. Mukarugwiza does not seek rescission of the sale to IH2 Property. (Doc. 20 at 7.) The pending Motion urges dismissal of the Verified Amended Complaint for failure to state a claim upon which relief can be granted, as provided by Federal Rule of Civil Procedure 12(b)(6).

**II. LEGAL STANDARD**

When considering a motion to dismiss, a court evaluates the legal sufficiency of the plaintiff's pleadings. Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint need include "only enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

On a motion to dismiss under Rule 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the non-moving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, the principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully." *Id.* To show that the plaintiff is entitled to relief, the complaint must permit the court to infer more than the mere possibility of misconduct. *Id.* If the plaintiff's pleadings fall short of this standard, dismissal is appropriate.

**III. ANALYSIS**

    **A. Breach of contract**

MetLife argues the court must dismiss Mukarugwiza's first two causes of action, which allege breach of the HHF Agreement between the Department and MetLife, because she lacks "standing" to press those claims. (Doc. 24 at 7.) Where a plaintiff was not a party to a contract, her ability to sue for breach turns on whether she is an intended beneficiary, or merely an incidental beneficiary, of that contract. The parties agree that to "prove intended beneficiary status, 'the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party.'" *GECCMC 2005-C1 Plummer St. Office Ltd. P'ship v. JP Morgan Chase Bank, N.A.*, 671 F.3d 1027, 1033 (9th Cir. 2012). "The contract need not name a beneficiary specifically or individually in the contract; instead, it can specify a 'class clearly intended by the parties to benefit from the contract.'" *Id.* But establishing "third-party beneficiary status in the context of a government contract is a comparatively difficult task":

> Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, rather than intended beneficiaries, and so may not enforce the contract absent a clear intent to the contrary.
> This 'clear intent' hurdle is a high one. It is not satisfied by a contract's recitation of interested constituencies, vague, hortatory pronouncements, statements of purpose, explicit reference to a third party, or even a showing that the contract operates to the third parties' benefit and was entered into with them in mind. Rather, we examine the precise language of the contract for a clear intent to rebut the presumption that the third parties are merely incidental beneficiaries.

*Id.* at 1033-34 (brackets, citations, and most internal quotation marks omitted).

Here, the language of the HHF Agreement is relatively sparse. It certainly does not state expressly that borrowers such as Mukarugwiza are intended beneficiaries. But

- 4 -

parties who contract to forbid foreclosure of enrolled borrowers' homes could hardly be indifferent to those borrowers' fates. As Mukarugwiza notes, at least one court in this District has previously found that materially identical language in an HHF agreement "clearly expresses an intent to benefit those borrowers for whom the lender receives notification of conditional approval for HHF." *Martinez v. Cenlar FSB*, No. CV-13-00589-TUC-CKJ, 2014 WL 4354875, at *5 (D. Ariz. Sept. 3, 2014). MetLife has not cited to any authority that reaches a different conclusion on similar facts. In the absence of contrary authority, the court concludes that Mukarugwiza "is within the class of persons that is an intended beneficiary of the [HHF] Agreement." *Id.* The motion to dismiss the first and second causes of action will be denied.[1]

### B. Wrongful foreclosure

Mukarugwiza's third cause of action is styled as one for wrongful foreclosure. According to the Verified Amended Complaint, MetLife "had a legal duty to Ms. Mukarugwiza not to foreclose, or initiate foreclosure once and while she met certain Program conditions" and "had a statutory duty under the Arizona Deeds of Trust Act not to foreclose unless the loan account was in default." (Doc. 20 at 11.) Mukarugwiza alleges she was not in default during her enrollment in Save Our Home, and MetLife therefore "breached its duty to Ms. Mukarugwiza by initiating the foreclosure process by substituting a trustee and noticing the sale." (*Id.* at 11-12.)

MetLife argues this cause of action is deficient in three ways. First, on MetLife's view, "[a]ny duty to not foreclose here would have to arise from the HHF Agreement,"

---

[1] The Verified Amended Complaint alleges that to qualify for Save Our Home, an applicant must "have a mortgage created on or before January 1, 2009." (Doc. 20 at 3.) But Mukarugwiza alleges that she purchased her home sometime "in 2009." (*Id.* at 2.) MetLife therefore contends Mukarugwiza cannot be an intended third-party beneficiary of the HHF Agreement because she did not meet Save Our Home's qualifying criteria. (Doc. 24 at 9.) In her Response, Mukarugwiza claims the Verified Amended Complaint's allegation regarding pre-2009 loans was an "error," and that in fact no such requirement exists. (Doc. 31 at 7.) The court assumes for purposes of the pending Motion that Mukarugwiza's statement is accurate, and Mukarugwiza will be granted ten days in which to file a second amended complaint that corrects only this discrepancy. Accordingly, dismissal on the theory that Mukarugwiza "pleaded herself out of her claims" is not appropriate. (Doc. 32 at 6.)

- 5 -

under which Mukarugwiza has no enforceable rights. (Doc. 24 at 9.) As explained above, however, the court finds Mukarugwiza is an intended third-party beneficiary of the HHF Agreement and therefore is not barred from seeking relief under that contract.

Second, MetLife maintains that Mukarugwiza has not pled sufficient facts to state a claim. MetLife cites to *In re Mortg. Elec. Registration Sys.*, 754 F.3d 772 (9th Cir. 2014), where the Ninth Circuit noted that under California law, a wrongful foreclosure plaintiff must allege that "the trustee or mortgagee *caused* an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust." 754 F.3d at 784 (emphasis added). Because it was JP Morgan, not MetLife, that actually sold Mukarugwiza's home to IH2 Property at the August 29, 2013 trustee's sale, MetLife asserts it did not "cause" the sale in question.

"Arizona, though a nonjudicial foreclosure state, has not expressly recognized the tort of wrongful foreclosure." *Id.* Still, several courts in this District have assumed such a tort exists under Arizona law. *Schrock v. Fed. Nat'l Mortg. Ass'n*, No. CV 11-0567-PHX-JAT, 2011 WL 3348227, at *6 (D. Ariz. Aug. 3, 2011) (collecting cases). Those courts have not adopted the elements of California's wrongful foreclosure tort when determining liability under Arizona law. *See, e.g.*, *id.* at *7 (reciting Georgia and Nevada tests). But even assuming Arizona courts would employ the California standard, there is no reason to think they would do so as stringently as MetLife suggests. Although MetLife did not itself sell Mukarugwiza's home, it recorded the notice of trustee's sale under which JP Morgan sold the home. (Doc. 20 at 5-6.) That recordation contributed, directly and substantially, to the foreclosure of Mukarugwiza's home. MetLife has not shown that Mukarugwiza's pleading is insufficient.

Finally, MetLife claims there can be no wrongful foreclosure cause of action under Arizona law because the measure of damages to which a plaintiff would be entitled "is the difference between the value of the property in question at the date of foreclosure and the remaining balance due on the indebtedness." (Doc. 24 at 10 (citation omitted).) Because this remedy would give "the borrower the same benefit that is provided by

Arizona's anti-deficiency statute, A.R.S. § 33-814(G), whether foreclosure was wrongful or not," MetLife believes no claim can exist at all. (*Id.* at 10-11.) But even on MetLife's view, Mukarugwiza would be entitled to damages for loss of value in her house if the value exceeded the encumbrance. She also seeks damages arising from moving expenses, her damaged credit rating, and her inability to modify her loan, among other things. (Doc. 20 at 9, 13.) MetLife's theory for dismissal is inadequate even on its own terms.

### C. Negligent performance of an undertaking

Mukarugwiza's final cause of action essentially alleges that MetLife was negligent in servicing her loan. (Doc. 20 at 12-13.) MetLife first claims Mukarugwiza cannot state such a claim because "[t]here is no 'special relationship' between a lender and borrower in the ordinary loan context," with the result that tort damages for breach of the implied covenant of good faith are not available. (Doc. 24 at 11.) This objection is difficult to understand, given that Mukarugwiza's negligence claim is not grounded in the implied covenant of good faith.

MetLife next argues that tort damages are barred by Arizona's economic loss doctrine. That doctrine bars tort recovery for non-physical injuries in certain circumstances. For example, "a plaintiff who contracts for construction cannot recover in tort for purely economic loss, unless the contract otherwise provides" or unless "economic loss is accompanied by physical injury to persons or other property." *See Flagstaff Affordable Hous. L.P. v. Design Alliance, Inc.*, 223 Ariz. 320, 326-27, 223 P.3d 664, 670-71 (2010). But the Arizona Supreme Court has cautioned that the economic loss doctrine should not "be applied with a broad brush." *Id.* at 329, 223 P.3d at 673. "The principal function of the economic loss doctrine . . . is to encourage private ordering of economic relationships and to uphold the expectations of the parties by limiting a plaintiff to contractual remedies for loss of the benefit of the bargain." *Id.* at 327, 223 P.3d at 671. "Rather than rely on the economic loss doctrine to preclude tort claims by

non-contracting parties, courts should instead focus on whether the applicable substantive law allows liability in the particular context." *Id.*

MetLife has cited no authority suggesting the economic loss doctrine bars a third-party beneficiary's tort recovery from a lender. *Cf. Wilson v. GMAC Mortg., LLC*, No. CV 11-00546-PHX-FJM, 2011 U.S. Dist. LEXIS 104331, at *10 (D. Ariz. Sept. 14, 2011) (declining to apply economic loss doctrine to "breach of a duty of care arising from the relationship between" borrower and loan servicer where that breach "exist[ed] independent of" agreement between them). Moreover, Arizona federal courts "have routinely held that lenders and loan servicers have a non-contractual duty towards borrowers which can give rise to negligence claims." *McIntosh v. IndyMac Bank, FSB*, No. CV-11-1805-PHX-GMS, 2012 U.S. Dist. LEXIS 7057, at *8 (D. Ariz. Jan. 23, 2012) (collecting cases). "At least one court has held that this duty of care 'is very narrow.'" *Id.* at *9. Even at its narrowest, however, the duty of care surely includes an obligation not to initiate foreclosure proceedings based—apparently—on an erroneous calculation of the borrower's obligations under her loan. Mukarugwiza's fourth cause of action must be allowed to proceed.

IT IS THEREFORE ORDERED that Defendant MetLife Home Loans, LLC's Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. 24) is denied.

IT IS FURTHER ORDERED that Plaintiff file by July 10, 2015, a second amended complaint that corrects the Verified Amended Complaint's allegedly erroneous allegation regarding the date by which Save Our Home participants must have taken out a mortgage.

Dated this 30th day of June, 2015.

Neil V. Wake
United States District Judge